FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 10, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERRY U. TOWNSEL,<br><br>      Plaintiff,<br><br>  v.<br><br>TIMOTHY WHITNEY, CHRISTOPHER M. MALONE, and, COREY SCHMIDT,<br><br>      Defendants. | NO. 4:22-CV-5122-TOR<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 57) and Defendants' Expedited Motion to Strike (ECF Nos. 78 and 79). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendants' Motion for Summary Judgment (ECF No. 57) is GRANTED in part and Defendants' Expedited Motion to Strike (ECF Nos. 78 and 79) is DENIED.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE ~ 1

## BACKGROUND

This matter arises out of alleged cruel and unusual punishment at the Washington State Penitentiary. On September 27, 2019, Plaintiff was denied access to the Inmate Yard during recreation by Corrections Officer Corey Schmidt because the length of his fingernails was too long and posed a safety hazard. ECF No. 58 at 2, ¶ 4.

In Defendants' version of events, Plaintiff initially began walking back to his cell but then began yelling, loudly enough for roughly 60 other inmates in the Yard to hear, phrases like "this is the way you start a war," and "are we going to let them do this to us?" ECF No. 57 at 1.

Worried that the behavior could incite a riot, Schmidt ordered Plaintiff to turn around and "cuff up." ECF No. 58 at 2, ¶ 8. According to Defendants, Plaintiff initially refused and continued shouting, but eventually complied and was placed in wrist restraints. *Id.*, ¶ 10. Defendants state that Plaintiff continued to resist as they began escorting him back to his cell. Schmidt and Corrections Officer Timothy Whitney placed him in a modified arm bar and bent him over at the waist to prevent him from biting them, spitting on them, or headbutting them as it appeared he was prepared to do. *Id.* at 3, ¶¶ 12, 13. Defendants also alleged that Plaintiff was making threats toward them such as "I will kill you." ECF No. 57 at 3. Plaintiff continued to resist, and Schmidt and Whitney attempted to place him

face down on the grass, but they instead landed on the walkway. ECF No. 58 at 3, ¶¶ 14, 15. Schmidt, who was controlling Plaintiff's right arm, was then relieved by Corrections Officer Christopher Malone. ECF No. 59 at 5, ¶ 49. Malone attested that he instructed Plaintiff to "stop resisting," and never pushed his face into the ground, got on his back, or restricted his airways. ECF No. 61 at 4, ¶¶ 24–26.

In Plaintiff's retelling of the events, he disputes that his nails were inappropriately long, but states that he turned back to walk toward his cell without yelling and disputes any allegation that he talked about starting a war or making race-based comments. ECF No. 76 at 2, ¶ 3. After he was ordered to return to his cell, Plaintiff argued he was then told to "stand for search," and thus he turned and stop to comply. *Id*. at 5, ¶¶ 4, 5. At his deposition, Plaintiff admitted that upon seeing an officer approach him with pepper spray, he said, "I know you ain't going to mace me over this bullshit." ECF No. 80 at 5. He asserted that he then complied with the order to "cuff up," the first time, and never gave any indication that he was going to bite, spit on, or headbutt the officers. ECF No. 76 at 6, 7 ¶¶ 10, 12. He argues that he never resisted any action taken by the officers and was then bent over at the waist, pressure was applied to his handcuffs, and then the officers, "jumped on his back," making no effort to move him to the grass. *Id*. at 7–8, ¶¶ 13, 15. Plaintiff speculates that this exchange occurred because he was mistaken for Eric Townsel, another inmate who had previously assaulted a

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE ~ 3

different Corrections Officer. *Id*. at 11, ¶ 45. While Plaintiff was in restraints and being brought to the ground in a chokehold, he alleges that he told the officers that they were hurting him and yelled in pain stating that he couldn't breathe. *Id*. at 4, 7, 15 ¶¶ 10, 13, 50, 52. He went on to state that "the guy on the right side . . . began to really hurt and add pressure to the handcuffs engaged on Plaintiff's wrists." *Id*. at 7, ¶ 13. Plaintiff stated that audio from a camera used during the event demonstrates that he was compliant and subjected to force without cause. *Id*. at 4, ¶ 10. He also alleges that photographs of his hands were taken shortly after the incident occurred, but no longer exist. *Id*. at 1, ¶ 2.

Plaintiff was then placed on a gurney and taken to the Intensive Management Unit. ECF No. 58 at 3, ¶ 16. He sustained abrasions to his right shoulder, left knee, and face for which he was treated by medical staff. *Id*. at 4, ¶ 18. Schmidt and Whitney also sustained abrasions. *Id*. at 3, ¶ 17.

Plaintiff, proceeding *pro se*, then commenced this lawsuit. Defendants filed a Motion for Summary Judgment, arguing that Plaintiff's constitutional rights were not violated, and even if they were, qualified immunity would shield the officers involved. ECF No. 57 at 5. Plaintiff has responded via a series of individual filings, some of which Defendants have moved to strike.

//

//

# DISCUSSION

## I.   Defendants' Motion to Strike

Defendants filed an Expedited Motion to Strike Plaintiff's late responses to the Motion for Summary Judgment.  ECF No. 78 and 79.  They argue that Plaintiff already filed a Response at ECF No. 69, to which they timely replied.  ECF No. 78 at 1–2.  He then filed two additional pleadings, ECF Nos. 76 and 77, which do not comport with the relevant civil rules.  *Id*.  Defendants argue that because Plaintiff was provided with *Pro Se* Prisoner Dispositive Motion Notice, he was on notice of the requirements of civil filings, and therefore the Court should strike all untimely documents.  ECF No. 78 at 3.  Defendants then, at ECF No. 80, filed a Reply to Plaintiff's Affidavit (ECF No. 76)[1] which essentially functions as both a

---

[1] Defendants also argue that Plaintiff's Affidavit should be stricken because he attests that he "believes the contents of his document are true and correct," rather than providing certification or verification that the contents are true and correct. ECF No. 80 at 1–2.  An unsworn affidavit must include a statement in "substantially the following form: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.'" 28 U.S.C. § 1746. However, a statement need only "substantially comply with the statute's suggested language" for the court to consider the document as evidence, *Commodity Futures*

substantive Response and a Statement of Disputed Facts.

The Ninth Circuit requires that *pro se* prisoners receive fair notice of the requirements needed to defeat a motion for summary judgment. *Woods v. Carey*, 684 F.3d 934, 938 (9th Cir. 2012). The notice must set forth in plain terms: a plaintiff's right to file counter-affidavits or other evidentiary materials; that failing to do so may result in the Court granting summary judgment; and that the granting of summary judgment would terminate the litigation. *Id*. Here, Plaintiff was provided with the *Pro Se* Dispositive Motion Notice, which included the requirement that a response is due 30 days after the motion is filed and must include a statement of disputed facts. ECF No. 62 at 1–2. Defendants argue that by receiving notice of the requirements of summary judgment, Plaintiff must be held to the exacting standard required by Federal Rule of Civil Procedure 56.

While true that *pro se* prisoners must follow the rules of procedure, some procedural rules may give way under the unique circumstances of incarceration. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (internal citations omitted). In

---

*Trading Comm'n v. Topworth Intern., Ltd*., 205 F.3d 1107, 1112 (9th Cir. 1999) (internal quotation marks omitted), by asserting that the statements in the affidavit were made "under penalty of perjury" and "that the contents were true and correct," *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE ~ 6

this case, Plaintiff has made extensive, out of order filings, but no document considered by the Court in rendering this decision came after the Motion for Summary Judgment hearing date. Moreover, Defendants have responded in substance to Plaintiff's late filings, and the Court considers the content of their Reply. *See* ECF No. 80. Thus, Defendants' Expedited Motion to Strike (ECF Nos. 78 and 79) is denied.

## II.   Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the

outcome of the suit under the governing law. *Id*. at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id*. The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.   42 U.S.C. § 1983

Plaintiff alleges violations under the Eighth and Fourteenth Amendments against Defendants Schmidt, Whitney, and Malone, for using excessive force amounting to cruel and unusual punishment. ECF No. 9 at 6–11. 42 U.S.C. § 1983 requires a claimant to prove (1) a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). However, qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). On summary judgment, a court examines whether a state official is entitled to qualified

immunity by determining (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was "clearly established at the time of the violation." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019).

In order to show excessive force, post-conviction inmates must establish a claim under the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Because the Eighth Amendment is "specifically concerned with unnecessary and wanton infliction of pain in penal instructions [and] serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified," Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim. *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *accord Hughes v. Rodriguez*, 31 F.4th 1211, 1220 (9th Cir. 2022).

To determine whether an Eighth Amendment violation has occurred, courts are to analyze whether the force as applied was excessive and determine whether it was administered in "a good-faith effort to maintain discipline, or maliciously and sadistically used to cause harm." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 327). Absent a showing of maliciously and sadistically for the purpose of causing harm, use of force does not amount to a constitutional violation. *Clement*

*v. Gomez*, 298 F.3d 898, 903 (9th Cir.2002) (quoting *Whitley*, 475 U.S. at 320–21). The Ninth Circuit has employed a five factor test to determine whether the force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (citing *Hudson*, 503 U.S. at 6).

Plaintiff presents that while he was being detained, officers "jumped on his back taking him to the ground," and with his hands behind his back, his face was driven into the concrete. ECF No. 76 at 8, ¶ 15. During the active restraint, Plaintiff argues that he told Defendants he could not breathe and that they were causing him pain. *Id*. at 4, ¶ 10. While Defendants deny that they restricted Plaintiff's airway, they do admit that Plaintiff was treated for abrasions. ECF No. 58 at 4, ¶ 18; ECF No. 61 at 4, ¶ 26. Plaintiff argues he was left with scars on his knees and shoulders, and lasting back pain. ECF No. 76 at 4, ¶ 16.

In an Eighth Amendment inquiry, the degree of injury is relevant, but lack of serious injury does not end a plaintiff's claim. *Hudson*, 503 U.S. at 7. The standard is whether a greater than *de minimis* force with the intent to harm was exerted on an individual. *Alexander v. Perez*, 124 Fed. Appx. 525, 526 (9th Cir. 2005). Here, Plaintiff's injuries are relatively minor, and he has not alleged any

lasting impact on his functional abilities based on his back pain. *See Hughes,* 31 F.4th at 1221 (finding police dog bites to be relatively minor injuries).

However, in taking the facts in the light most favorable to Plaintiff, his relatively mild injuries may still be more than *de minimis*. Outstanding questions of fact remain regarding the need for the application of force generally, the amount of force applied, and whether a reasonable belief existed that a threat was eminent. In the face of a potential riot situation, whether an action of a defendant is a violation of the Eighth Amendment still "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Graham v. Connor,* 490 U.S. 386, 392 n.5 (1989) (internal citations omitted). Defendants maintain that Plaintiff began yelling about starting a war before being told to "cuff up," and after an initial compliance became agitated, requiring the officers to force him to the ground.[2] ECF No. 57 at 2–3; ECF No. 58 at 2–3, ¶¶ 8–15. This was done, Defendants argue, in order to quell a potential riot that Plaintiff could incite, given

---

[2] Though the Court notes that shouts of racial epithets and the desire to "start a war," do not appear in Defendants' Statement of Material Facts not in Dispute (ECF No.58), and they do not allege that Plaintiff was shouting such statements in their Reply Statement of Material Facts (ECF No. 80).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE ~ 11

the presence of roughly 60 inmates in the yard beyond open gates, and protect their own safety.  ECF No. 58 at 2, ¶ 7; ECF No. 59 at 2–4, ¶¶13, 14, 15, 26, 27, 38; ECF No. 60 at 2–5, ¶¶ 15–22, 31–39, 55; ECF No. 61 at 2–4, ¶¶ 10–14, 30.  Plaintiff argues that he questioned why he was being denied access to the yard but did not become overtly agitated until Defendants began to apply pressure to his handcuffs.  ECF No. 76 at 7, ¶ 13.  He asserts that Defendants likely mistook him for a different inmate, Eric Townsel, who had assaulted a corrections officer, and this formed the basis for their use of force against him.  *Id*. at 11, ¶ 45.  Though Defendants argue that the presence of Elijah Hall, another inmate who was in the yard, yelling to Plaintiff demonstrates the carry of his voice necessitating swift action (ECF No. 80 at 5–6), Hall provided a statement that he was approximately 30 feet away and could hear the entire conversation between Plaintiff and Defendants (ECF No. 76 at 20, ¶ 3).  Hall told Plaintiff to "just go back to [his] unit."  *Id*. at 21, ¶ 6.  Moreover, Plaintiff argues that once he was on the ground, force was applied to his handcuffs and he informed the officers, including "the guy on the right," that he could not breathe.

Plaintiff also provides, as an attachment to his Amended Complaint and with "Affidavit in Opposition," findings from various internal reviews that he was not at fault for the events of September 27, 2019.  On October 1, 2019, in what appears to be a three-level review of the Plaintiff's Use of Force Report, Captain D.

Windows, the second layer of review, did not agree with actions of the involved employees and recommended an investigation. ECF No. 76 at 34. At a November 13, 2019, hearing, the officer in charge found, after reviewing the video of the event, that:

> [T]he offender back towards the unit. Staff starts to follow him, he stops and walks back to staff . . . the offender was following directions at this point . . . this behavior does not meet the criteria for riot. I find that staff initiated the use of force.

*Id*. at 19.

Plaintiff was ultimately found not guilty of inciting a riot and resisting an order, though was found guilty of making threats toward staff, stating that "he was going to scrape someone's face like they scraped his." *Id*. at 22.

"Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22. This deference is extended when measures are taken to prevent incidents such as riots and any other breach of prison security protocol. *Id*. at 322. However, "[i]t does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id*. The Court is wary to defer to the choices of Defendants when Plaintiff has

alleged that audio of the incident exists contradicting their statements, but such recording was not proactively supplied to the Court for review.  ECF No. 76 at 24.  Defendants do not address the existence of the video or the credibility of Plaintiff's statements about what the audio from the video demonstrates.  Much like at least two prison officials who reviewed the additional materials from the events of the day, a reasonable jury could find for Plaintiff regarding whether a use of force was necessary, whether the degree of force used was proportional, and whether Defendants reasonably perceived a threat that required force as a response given the questions of fact that remain.

      As to factor five, the Court again finds a triable issue of fact.  Defendants assert that two commands were given to "cuff up" and that every effort was made to bring Plaintiff down in the grass, but to no avail.  ECF No. 58 at 2, ¶¶ 7–10.  Defendants also assert that Plaintiff was repeatedly instructed to stop resisting, and force was necessary to regain control.  ECF No. 61 at 3–4, ¶¶ 23–24.  Plaintiff argues that force was applied without much relevant warning, and that Whitney and Schmidt brought him immediately down onto the concrete.  ECF No. 76 at 7–8, ¶¶ 12, 13, 15.  Without the benefit of the audio recording, and each party's competing account of what actually happened, the Court must draw an inference in favor of Plaintiff and deny summary judgment.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE ~ 14

### IV. Qualified Immunity

Defendants assert that even if they did violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, they are nevertheless entitled to qualified immunity. Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Given the above finding, the Court is left to consider whether that right was "clearly established at the time of the violation." *Horton by Horton*, 915 F.3d at 599.

If Plaintiff's allegations are true, then Defendants are not entitled to qualified immunity, as use of force against a prisoner who is not resisting is well settled as a violation of the Eighth Amendment. *See Hudson,* 503 U.S. at 4, 10 (holding that prison guards who punched a prisoner in handcuffs after a prior argument violated the Eighth Amendment as the injuries inflicted were not *de minimus*); *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018) (determining that a jury should decide whether a use of force against individuals who were not resisting was part of a "good faith effort to maintain or restore discipline"); *Butler v. Anakalea*, 472 Fed. Appx. 506, 507 (9th Cir. 2012) (finding a triable issue of fact where prisoner was slammed and pressed against a wall while handcuffed and not actively resisting); *Alexander*, 124 Fed. Appx. at 526 (stating

that acts of force against a prisoner who was handcuffed and not resisting "violated [the] clearly established law" of the malicious and sadistic use of force standard); *Jones v. Cunningham*, 94 Fed. Appx. 447, 448 (9th Cir. 2004) (finding a grant of summary judgment on the basis of qualified immunity improper where prisoner officials slammed the prisoner to the ground, taunted him with racial slurs, and refused to pull up his sweatpants or boxer shorts after the prisoner initially refused a command to leave his cell but then complied without resistance).

If Plaintiff was complying with their commands, then a reasonable prison official in the position of Defendants would have known that applying force was a violation of his Eighth Amendment rights. *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002). As such, if a jury finds that Plaintiff was subjected to force that was not in a good faith effort to maintain or restore discipline, Defendants will not be shielded by qualified immunity.

V.   **Motion to Continue**

Plaintiff previously filed a Motion to Continue the Jury Trial to May 11, 2025, to which Defendants did not object. ECF Nos. 63 and 65. The Court shall issue a separate scheduling Order to reflect a new trial date of May 12, 2025, and related pretrial deadlines.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 57) is **GRANTED in part.** Plaintiff's claim of violations of the Fourteenth Amendment are **DISMISSED with prejudice**.

2. Defendants' Motion to Strike (ECF No. 78) and Motion to Expedite (ECF No. 79) are **DENIED**.

3. The February 24, 2025, trial date and all related pretrial deadlines are **VACATED.** The Court shall issue a separate Amended Scheduling Order to reflect the amended **May 12, 2025**, trial date.

4. Plaintiff's Motion for Extension (ECF No. 73); Motion to Deny Summary Judgment (ECF No. 77); and Opposition of Defendants' Motion to Strike (ECF No. 84) are **DENIED as MOOT**.

The District Court Executive is directed to enter this Order and furnish copies to parties.

DATED February 10, 2025.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE ~ 17